UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ZACHARY CROUCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 3:24-CV-316-KAC-DCP |
| v. | ) |
| | ) |
| THE UNIVERSITY OF TENNESSEE, | ) |
| | ) |
| Defendant. | ) |

### ORDER & REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b) and the Rules of this Court on Plaintiff's Amended Complaint [Doc. 8] and his on Application to Proceed In Forma Pauperis With Supporting Documentation ("Application") [Doc. 2]. On October 15, 2024, the Court entered an Order to Show Cause explaining that there were certain deficiencies in Plaintiff's initial complaint [Doc. 7]. Instead of recommending dismissal, the Court allowed Plaintiff to file an amended complaint in an attempt to cure these deficiencies [*Id.*]. On October 25, 2024, Plaintiff filed an Amended Complaint [Doc. 8].

For the reasons more fully stated below, the undersigned **GRANTS** Plaintiff's Application [**Doc. 2**] but **RECOMMENDS** that the District Judge **DISMISS** the Amended Complaint [**Doc. 8**].

I.  **DETERMINATION ABOUT THE FILING FEE**

Plaintiff has filed an Application [Doc. 2] with the required detailing of his financial condition. Section 1915 allows a litigant to commence a civil or criminal action in federal court without paying the administrative costs of the lawsuit. *Denton v. Hernandez*, 504 U.S. 25, 27

(1992). The Court's review of an application to proceed without paying the administrative costs of the lawsuit is normally based solely on the affidavit of indigence. *See Gibson v. R.G. Smith Co.*, 915 F.2d 260, 262–63 (6th Cir. 1990) (observing that "the filing of a complaint is conditioned solely upon a person's demonstration of poverty in his affidavit and the question of frivolousness is taken up thereafter"). To proceed without paying the administrative costs, the plaintiff must show by affidavit the inability to pay court fees and costs—it is a threshold requirement. 28 U.S.C. § 1915(a)(1). One need not be absolutely destitute, however, to enjoy the benefit of proceeding in the manner of a pauper, or in forma pauperis. *Adkins v. E. I. DuPont de Nemours & Co., Inc.*, 335 U.S. 331, 342 (1948). An affidavit to proceed without paying the administrative costs is sufficient if it states that the plaintiff cannot, because of poverty, afford to pay for the costs of litigation and still pay for the necessities of life. *Id*. at 339.

The Court finds the Application is sufficient to demonstrate that Plaintiff has no income and no assets. Considering Plaintiff's Application, it appears to the Court that his economic status is such that he cannot afford to pay for the costs of litigation and still pay for the necessities of life. The Court will allow Plaintiff to proceed in the manner of a pauper. The Court **DIRECTS** the Clerk to file the Amended Complaint in this case without payment of costs or fees. The Clerk **SHALL NOT**, however, issue process at this time.

II.     RECOMMENDATION AFTER SCREENING OF THE COMPLAINT

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. 28 U.S.C. §§ 1915(e)(2); *Benson v.*

*O'Brian*, 179 F.3d 1014, 1015–16 (6th Cir. 1999).[1]  Courts also have a continuing duty to ensure that jurisdiction exists to hear the case.  *Answers in Genesis, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." (citations omitted)).  To survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A. **Summary of the Complaint**

On July 24, 2024, Plaintiff filed his initial Complaint [Doc. 1].  As previously summarized in the Court's October 15, 2024 Show Cause Order:

> Plaintiff brings this action against the University of Tennessee ("the University").  He alleges that he chose the University for his graduate work in pursuing a Ph.D. in Nuclear Engineering and that in August 2019, he signed an employment contract "with funding granted until the end of his academic journey at [the University]." He states that "[he] was fired, without due cause, and lost his stipend, his tuition wavier, and medical insurance." He alleges that he was fired "because of his comment of the tuition bill," which he claims is "a violation of the First Amendment of the Constitution, Freedom of Speech."  He also alleges that he was fired "due to his sexual orientation."  In addition, Plaintiff generally alleges that "[the University], uses [its] . . . [s]overeign [i]mmunity[] to commit treasonous acts against the United States . . . [and] to send those people who are not favored . . . into poverty through termination." Finally, Plaintiff states that his request for financial help was denied

---

[1] Despite the reference to prisoners, 28 U.S.C. § 1915 requires the Court to screen complaints filed by non-prisoners seeking in forma pauperis status.  *McGore v. Wrigglesworth*, 114 F. 3d 601, 608 (6th Cir. 1997) ("Unlike prisoner cases, complaints by non-prisoners are not subject to screening process required by § 1915A. However, the district court must still screen the complaint under § 1915(e)(2)."), *overruled on other grounds by Jones v. Brock*, 549 U.S. 199 (2007).

and that the University "was negligent in helping a student at [the University] become successful[.]"

[Doc. 7 p. 2 (citations omitted)]. In that same Show Cause Order, the Court detailed that there were certain deficiencies in the Complaint. The Court explained:

- [T]o the extent Plaintiff asserts claims against the University under Tennessee common law (negligence and fraud), the "State of Tennessee has not waived its immunity from suit under the Eleventh Amendment for such claims."

- As to Plaintiff's allegation that the University violated his First Amendment right to free speech and his corresponding request for damages, Plaintiff has sued only the University and consequently, his § 1983 claim against the University is barred by the Eleventh Amendment.

- To the extent Plaintiff is asserting a Title VII claim, his Complaint alleges no set of facts beyond the conclusory allegation that he was fired "due to his sexual orientation[.]"

[*Id.* at 3–4 (citations omitted)].

Instead of recommending that the Complaint be dismissed, the Court provided Plaintiff an opportunity to cure the noted deficiencies [*Id.* at 4–5]. On August 20, 2024, Plaintiff filed an Amended Complaint [Doc. 8]. The Amended Complaint is the same as the original Complaint, naming only the University as a defendant, but with an added section titled, "Detailed Statement of the Facts Pertaining to Claims" [*Id.* at 4]. In this additional section, Plaintiff states that he was paid little money for his teaching and research assistant positions at the University and that "[t]he 'supposed' tuition waiver from teaching and research assistantships did not waive the full tuition" [*Id.*]. He further states that "[he] was unable to save any money during the Fall semester of 2019[,]" and he received a tuition bill at the end of that semester in the amount of $2,000 [*Id.*]. Plaintiff alleges that "the financial aid department would not give [him] any loan money for the tuition bill" and that he contacted several departments seeking grants or an extension of time in

which to pay the bill [*Id.*]. Plaintiff asserts that the University bursar put a hold on his academic record, causing him to be unable to change his class schedule for the Spring 2020 semester [*Id.*]. He states that after receiving a response from the bursar's office in January 2020, which "did not address [his] current situation" of being unable to pay the tuition, secure a loan, or change his schedule, he sent an email back to the bursar's office that was forwarded to his advisor in the Nuclear Engineering Department, Dr. Jason Hayward [*Id.*].[2] Plaintiff asserts that "Dr. Hayward[] said he warned [Plaintiff] about his communication with others . . . [and] fired [Plaintiff] for the words in the email that was sent to the bursar's office on or near January 20, 2020" [*Id.*]. He maintains that the words in the email for which he was fired violate his freedom of speech under the First Amendment [*Id.*].

  **B.**  **Screening of the Complaint**

Plaintiff's Amended Complaint is before the Court for screening under the PLRA. *See* 28 U.S.C. § 1915(e)(2)(B). Like Plaintiff's initial complaint, the Amended Complaint arises from events during Plaintiff's teaching and research assistant positions at the University in August 2019 through January 2020. The Amended Complaint sues the University, who was named as the sole defendant in Plaintiff's initial pleading, seeking a total of $20 million in damages for the following claims: $10 million for "Freedom of speech violation . . . firing for words spoken in an email;" $2.5 million for "Treason . . . using sovereign immunity to commit unconstitutional acts;" $2.5 million for "firing for discriminatory reasons;" $2.5 million for "Negligence . . . being negligent in helping a student in need;" and $2.5 million for "Fraud . . . fraudulently stating in [its] mandate that [it does] not discriminate against sexual orientation" [Doc. 8 p. 5].

---

[2]  Plaintiff spells this name both as "Hayword" and "Hayward," [*see* Doc. 8 p. 4] but for ease of reference, the Court will use only "Hayward."

5

Case 3:24-cv-00316-KAC-DCP  Document 9  Filed 11/13/24  Page 5 of 9  PageID #: 41

The claims in Plaintiff's Amended Complaint are directed at the University. As explained in the Court's previous Show Cause Order, "[t]o the extent Plaintiff asserts claims against the University under Tennessee common law (negligence and fraud), the 'State of Tennessee has not waived its immunity from suit under the Eleventh Amendment for such claims.'" [Doc. 7 p. 3 (citations omitted)]. *See Burnside v. Univ. of Memphis*, No. 15-CV-2193, 2015 WL 5643361, at *4 (W.D. Tenn. Aug. 12, 2015) ("Congress has not abrogated Tennessee's immunity to allow tort claims to be filed against the State in federal court. Nor has Tennessee consented to suit in federal court for tort claims brought under state law."), *report and recommendation adopted sub nom.*, *Burnside v. Univ. of Memphis*, No. 15-2193, 2015 WL 5643654 (W.D. Tenn. Sept. 24, 2015). Because the University is entitled to Eleventh Amendment immunity, this Court lacks jurisdiction. *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) ("[T]he Eleventh Amendment is a true jurisdictional bar that courts can . . . raise *sua sponte* at any stage in litigation, and, once raised as a jurisdictional defect, must be decided before the merits."); *Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) ("Dismissals for lack of jurisdiction based on Eleventh Amendment immunity should be made without prejudice." (citation omitted)).

Similarly, as to Plaintiff's claim that the University violated his First Amendment right to free speech and his corresponding request for damages, Plaintiff has sued only the University and consequently, his § 1983 claim against the University is barred by the Eleventh Amendment [Doc. 7 p. 3 (citing *McKenna v. Bowling Green State Univ.*, 568 F. App'x 450, 457 (6th Cir. 2014) (finding that plaintiff, having sued only the University and its Board of Trustees, rather than the individual trustees, failed to state a claim against a person covered by § 1983) (citations omitted))]. While the Amended Complaint alleges some additional facts surrounding the January 2020 email

that Plaintiff sent to the University's bursar office, including that he was fired by Dr. Hayward "for the words in the email" [Doc. 8 at 4], the University is not a proper defendant.[3]

With respect to Plaintiff's final claim of discrimination based on sexual orientation, Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). As explained in the Court's Show Cause Order, state sovereign immunity for Title VII claims has been validly abrogated by Congress [Doc. 7 p. 4 (citations omitted)], and Title VII's prohibition on sex discrimination has been found to encompass discrimination based upon an employee's sexual orientation. *Boshaw v. Midland Brewing Co*, 603 (6th Cir. 2022) (citing *Bostock v. Clayton County*, 140 S. Ct. 1731, 1833–34 (2020)). The Court is mindful that, at this stage, the plaintiff is not required to plead a prima facie case of discrimination. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–14 (2002); *see also Sturgill v. Am. Red Cross*, 114 F.4th 803, 809 (6th Cir. 2024) ("*Twombly*'s and *Iqbal*'s adoption of the plausible-pleading standard did not disturb *Swierkiewicz*'s holding."). Nevertheless, the plaintiff must still provide enough factual allegations "to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555.)

---

[3] Plaintiff's Amended Complaint states that Dr. Hayward terminated Plaintiff's employment [Doc. 8 p. 4]. But it does not appear to the undersigned that he wishes to pursue a claim against Dr. Hayward [*see id*. at 1], especially given that the Court noted this deficiency in its Show Cause Order [Doc. 7 p. 3]. The undersigned therefore has construed Plaintiff's Amended Complaint as it is currently presented. To the extent he wishes to pursue any claim against Dr. Hayward, the undersigned recommends that an amendment would be necessary.

7

The same pleading deficiency noted in the Court's Show Cause Order remains. That is, to the extent Plaintiff is asserting a Title VII claim, his Amended Complaint alleges no set of facts beyond the conclusory allegation that he was fired "due to his sexual orientation" [Doc. 8 at 3]. In his Amended Complaint, Plaintiff asserts that "[w]hat the [University] does is they fire people of the LGBTQ by looking at their Facebook profiles. Once their identity is discovered, they devise ridiculous reasons to fire these individuals" [*Id.*]. He alleges that the University "has a record of hating the LGBTQ community," giving two examples, neither of which has any connection to Plaintiff's asserted claims.[4] "While at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice,' *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), it is still necessary to include some 'well-pleaded factual allegations' to support the claim." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Iqbal*, 129 S. Ct. at 1950). Here, Plaintiff's Amended Complaint offers no facts to support the conclusory claim that he was discriminated against. *See Frazier v. Colthfelt*, No. 19-10389, 2020 WL 914323, at *8 (E.D. Mich. Feb. 7, 2020) (recommending that the plaintiff's allegations be dismissed during the screening phase because he "offer[ed] no factual allegations to support his conclusory claim that [the defendant] discriminated against him"), *report and recommendation adopted*, No. 19-10389, 2020 WL 905746 (E.D. Mich. Feb. 25, 2020). "Although the plaintiff may feel personally aggrieved because he was terminated, such subjective beliefs alone are insufficient to establish a plausible right to relief." *Bailey v. KC Whiskey River, LLC*, No. 3:24-CV-00577, 2024 WL 3033992, at *2 (M.D. Tenn. June 17, 2024). (citing *Shorter v. Magneti Marelli of Tenn., LLC*, 613

---

[4] Plaintiff alleges that "people are regularly called [a derogatory name]" and that the "homophobic Board of Directors . . . received donations to remove a [gay] bar" [Doc. 8 p. 3]. But Plaintiff does not allege that he was ever referred to in a derogatory fashion or how the closing of a bar relates to his claim.

8

F. Supp. 3d 1044, 1051–52 (M.D. Tenn. 2020). The Court therefore recommends that his claims be dismissed for failure to state a claim of relief. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### C. Amending the Complaint

As Plaintiff has already been given an opportunity to amend his Complaint to cure these deficiencies, the undersigned declines to offer him another opportunity to amend at this time.[5] [6]

## III. CONCLUSION

For the reasons explained above, the undersigned **GRANTS** Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs [**Doc. 2**][7] and **RECOMMENDS**[8] that the District Judge **DISMISS** Plaintiff's Amended Complaint [**Doc. 8**].

Respectfully submitted,

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

[5] But *see supra* note 3.

[6] The undersigned notes that Plaintiff has filed two other cases that were dismissed during the screening process. *See Crouch v. Tennessee Dep't of Human Servs.*, 3:24-cv-142 [Doc. 8] (E.D. Tenn. Aug. 14, 2024) and *Crouch v. United States Dep't of the Treasury*, No. 3:24-cv-143 [Doc. 9] (E.D. Tenn. Aug. 14, 2024).

[7] This matter is to be presented to the District Judge pursuant to this Report and Recommendation under the authority of *Gibson v. R.G. Smith Co.*, 915 F.2d 260, 263 (6th Cir. 1990), wherein the Court of Appeals states that such matters proceed automatically to a district judge for examination of the complaint after a magistrate judge has granted the petition to proceed without prepayment of costs.

[8] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153–54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).